WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| Thomas Christian von Meer, | No. CV-18-00542-PHX-JJT |
|---|---|
| Petitioner, | **ORDER** |
| v. | |
| Mary Beth Hoselton, | |
| Respondent. | |

Thomas Christian von Meer ("Petitioner") filed a Verified Petition for Return of Child Under the Hague Convention on the Civil Aspects of International Child Abduction and the International Child Abduction Remedies Act (22 U.S.C. § 9003(b)) on February 16, 2018. (Doc. 1.) Mary Beth Hoselton ("Respondent") filed her Answer on February 27, 2018. (Doc. 17.) The Court held an evidentiary hearing on March 1, 2018. For the reasons set forth below, the Court will grant the Petition.

**I.   Factual Background**

Petitioner, a German citizen and resident of Italy, and Respondent, a United States citizen, were involved in a long term romantic and domestic relationship from at the latest 2002 until approximately 2006. Their union produced a child ("N.V."), who was born in Wangen, Germany in late 2002. N.V. holds both German and United States citizenship. Petitioner, Respondent and N.V. lived together in Germany until early 2004, when the three moved to Italy and lived there together.

At some point in 2006, Petitioner and Respondent ended their domestic relationship and began maintaining separate households, both in the area of Florence,

Italy. For approximately the next ten years, they observed an informal shared custody regimen, wherein N.V. would alternate living with each parent on a weekly basis. This arrangement ended in the autumn of 2016, when Respondent relocated to Arizona for work and to further her education. At that time, N.V. remained in Italy with Petitioner and continued attending the private school in which she had previously been enrolled. No party presented evidence that custody of N.V. had been adjudicated by any tribunal or agency to this point.

On December 21, 2016, several months after Respondent relocated to Arizona, a judge of the Florence Court entered an order granting Petitioner exclusive custody of N.V. (3/1/18 Hearing Ex. 2.)[1] The Florence Court found that Respondent had personally received service of the custody petition but did not appear or file any defensive brief. The Florence Court made its order immediately enforceable.

In April 2017, Petitioner bought a round-trip airline ticket for N.V. to spend the summer with her mother in the United States. In June 2017, when N.V. had completed her school year in Florence, Petitioner flew with her from Europe to Las Vegas to meet Respondent. Petitioner returned to Italy. N.V.'s round-trip ticket bore a return date of August 16, 2017, shortly before her school would begin the new academic year.

Petitioner had provided N.V. with a data-enabled cellular telephone so she could communicate with either parent by voice or text wherever she was. In July 2017, after N.V.'s communications to her father had diminished and Petitioner was unable to reach her on her phone, Petitioner's attorney in Italy, Roberta Ceschini, began communicating with Respondent via email to communicate Petitioner's expectation that Respondent would return N.V. to Italy on the August 16 flight. Ms. Ceschini advised Respondent that if she did not return N.V. timely, Ceschini would file a petition under the Hague

---

[1] Although no party produced direct evidence as to the institution, pendency and course of proceedings in the Florence family court matter, the Florence court's order indicates Petitioner instituted proceedings seeking legal custody of N.V. in March 2016, about six months before Respondent moved to Arizona. In his pleading to the Florence Court, Petitioner requested "exclusive custody of [N.V.] to live with her in his house in Grieve in Chianti," and also requested an order "that the child can visit her mother Beth Hoselton whenever she wants." (*Id.*)

Convention on the Civil Aspects of International Child Abduction ("Convention"). Respondent acknowledged in a July 27, 2017 email to Ceschini that "it was my understanding [N.V.] is to return in August from the get go," but advised that N.V. did not want to return to Italy, and that as N.V's mother, "it is my duty to support and protect her." (Ex. 15.)

N.V. did not return to Italy on August 16, 2017, or at any time thereafter.

## II. The Convention, ICARA and Legal Standards

The Convention seeks "to deter parents from abducting their children across national borders by limiting the main incentive for international abduction–forum shopping of custody disputes." *Cuellar v. Joyce*, 596 F. 3d 505, 508 (9th Cir. 2010). The court receiving a petition under the Convention may not resolve the question of which parent is best suited to have custody of the child. *Id.* With a few narrow exceptions, which are discussed below in relevant part, this Court must order a child delivered to its country of habitual residence so that the courts of *that* country can determine custody. *See id.*; 22 U.S.C. § 9001(a)(4). Both the United States and Italy are signatories to the Convention and are Contracting States within its meaning. The United States Congress has enacted the International Child Abduction Remedies Act ("ICARA") to implement the Convention. 22 U.S.C. §§ 9001 *et seq.* (formerly 42 U.S.C. §§ 11601 *et seq.*).

The Convention identifies as its objectives: 1) securing the prompt return of children wrongfully removed to, or retained in, any Contracting State; and 2) ensuring that rights of custody and access under the law of one Contracting State are effectively respected in other Contracting States. Convention, Arts. 1(a) & (b), 19 I.L.M. 1501. To those ends, the Court shall return a minor child to its country of habitual residence if the child was wrongfully removed from that country or wrongfully retained outside of that country. Convention, Art. 12.

The removal or retention of a child is to be considered wrongful where-

> a) it is in breach of rights of custody attributed to a person … under the law of the State in which the child was habitually resident immediately before the removal or retention; and

      b) at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention.

Convention, Art. 3. A petitioner seeking such return must prove wrongful removal or retention by a preponderance of the evidence. *Murphy v. Sloan*, 982 F. Supp. 2d 1065, 1073 (N.D. Cal. 2013). The Ninth Circuit has prescribed four questions trial courts must answer to determine whether wrongful removal or retention has occurred: 1) When did the removal or retention at issue take place? 2) Immediately prior to the removal or retention, in which state was the child habitually resident? 3) Did the removal or retention breach the rights of custody attributed to the petitioner under the law of the habitual residence? 4) Was petitioner exercising those rights at the time of the removal or retention? *Mozes v. Mozes*, 239 F.3d 1067, 1070 (9th Cir. 2001).

To determine a child's habitual residence, the Court must determine the last shared, settled intent of the parents. *Murphy v. Sloan*, 746 F.3d 1144, 1150 (9th Cir. 2014) (citing *Valenzuela v. Michel*, 736 F.3d 1173, 1177 (9th Cir. 2013)). Finally, where a court determines that a child has been wrongfully removed or retained away from its habitual residence, that court still may decline to order the child's return if it concludes that an exception to the Convention, as implemented by ICARA, applies. 22 U.S.C. § 9001(a)(4).

**III. Analysis**

    **A. Whether Removal or Retention was Wrongful**

        <u>Question 1: When did the removal or retention at issue take place?</u>

Petitioner does not contend that N.V. was wrongfully removed from Italy, and the evidence at the hearing made clear that he agreed N.V. could visit Respondent for her 2017 summer vacation; indeed, Petitioner traveled with N.V. from Europe to the United States to deliver N.V. to her mother in June 2017 after N.V.'s academic year ended. Thus the Court's focus is on whether Respondent's subsequent retention of N.V. in Arizona was wrongful.

Both parties' testimony, N.V's round trip airline ticket and the email communications introduced into evidence all demonstrate that Petitioner and Respondent had agreed N.V. would stay in Arizona until August 16, 2017, and thereafter return to Italy. The retention at issue, then, began on August 16, when Respondent did not return N.V. to Europe as agreed, and continues to this day.

> Question 2: Immediately prior to the retention, in which nation was N.V. habitually resident?

As an initial matter, the Court finds that as of August 16, 2017, the habitual residence of N.V. was Italy. The parties had lived there with N.V. together from 2004 until their separation in approximately 2006, and then separately from 2006 until late 2016, when Respondent relocated to Arizona. N.V. remained in Italy with Petitioner and continued to attend school there after Respondent moved to Arizona, and neither party evinced any indication of an intent for N.V. to leave. Petitioner sought full custody of N.V. in the Italian courts in 2016, and Respondent neither appeared nor filed any opposition thereto. Indeed, to that point, N.V. had known no other residence besides Italy. And as noted above, at the point N.V. came to Arizona in June 2016 to visit her mother, the parties agreed she would be returning to Italy on August 16 to begin her next school year. Regardless of what Respondent may have individually intended to do after N.V. arrived to visit her, the Court finds that the last shared intent of the parties was for N.V.'s habitual residence to be Italy. *Murphy*, 746 F.3d at 1150. The Court sees no evidence that Petitioner shared Respondent's intent for N.V. to remain in Arizona. He testified that he agreed only to a temporary visit to Arizona so N.V. could spend time with her mother and that it was always his expectation that N.V. would return to Italy in August to resume her schooling there. N.V.'s habitual residence as of August 16, 2017 was Italy.

. . . .

. . . .

. . . .

### Question 3: Did the retention breach the rights of custody attributed to the petitioner under the law of the habitual residence?

At the hearing, Petitioner introduced an Order of the Florence Court dated December 21, 2016, granting him exclusive custody of N.V. While Respondent testified that she did not agree with the Florence Court's decision or the circumstances under which it was obtained, she did not challenge its authenticity or validity. The Court concludes that the retention of N.V. as of August 16, 2017, and thereafter breached Petitioner's custody rights in that, during the period of wrongful retention, he has lost his ability to communicate with N.V. and participate in the decision of where and under what circumstances she would live. He also has lost his ability to parent N.V. or otherwise have physical access to her, other than when he can afford to travel to the United States to spend time with her. Respondent's retention of N.V. has breached the custody rights attributed to Petitioner under the Florence Court Order.

### Question 4: Was Petitioner exercising those rights at the time of the retention?

The Court finds the evidence was unequivocal that Petitioner was exercising his rights of custody at the time of N.V.'s retention in Arizona.

Based on all of the above findings, this Court concludes that Respondent did wrongfully retain N.V. from returning to Italy, her last habitual residence. Even when a child has been wrongfully retained, however, the Court may decline to order the child's return if certain exceptions as set forth in the Convention are satisfied. Only two of those exceptions are possibly relevant to the circumstances of this case. The Court discusses them below.

**B.     Exception for "grave risk of physical or psychological harm."**

The Convention does not require return of N.V. to Italy if Respondent shows by clear and convincing evidence "a grave risk that [N.V.'s] return would expose [her] to physical or psychological harm." Convention, Art. 13(b); 42 U.S.C. § 9003(e)(2)(A). This exception is "drawn very narrowly," and the risk shown must be "grave, not merely

serious." *Goudin v. Remis*, 415 F.3d 1029, 1036 (9th Cir. 2005). The Ninth Circuit makes clear that this exception does not constitute a "license for a court in the abducted-to country to speculate on where the child would be happiest." *Id.* at 1035; *see also Cuellar*, 590 F.3d at 509.

Respondent presented evidence in two areas from which she argues that returning N.V. to Italy would present a grave risk of physical or psychological harm. First, Respondent argues that the school system in Arizona is better equipped to address N.V.'s dyslexia and similar learning disabilities than her school in Florence, and the Italian secondary education system generally. This argument and the evidence supporting it goes to the issue of the best interests of the child and is properly considered by the family court with jurisdiction to determine custody issues, rather than this Court in its limited inquiry.

Respondent also presented evidence, in the form of testimony by N.V.—which the Court allowed over Respondent's objection—that N.V. had on one or more occasions seen Petitioner "smoke weed and hash," and that she also had seen Respondent in the car while, or after, drinking alcohol. Because Petitioner had rested his case at the time the Court heard this evidence from N.V. and because Respondent had not provided advance notice that she would call N.V. or introduce such evidence at the hearing, Petitioner did not have the opportunity to present evidence countering these assertions, and he chose not to cross-examine his daughter on them. The evidence, such as it is, is thus uncontested.

The Court does not minimize the seriousness of the allegations if true. But drug use and being in a car while under the influence of alcohol, especially absent testimony or other evidence that Petitioner put N.V. at risk of harm while engaged in these acts, does not rise to the level of grave harm contemplated by Article 13(b) of the Convention. Such behavior, if proven, presents a question of suitability as a parent, which goes to the issue that will be before the family court in the country of N.V.'s habitual residence. The question before this Court is singularly whether returning N.V. to Italy would present a grave risk of physical or psychological harm, and that standard is very high. This Court

has concluded even in cases where a petitioner was repeatedly physically violent that such violence still was not sufficient to show risk to the child. *See, e.g., Nuñez v. Ramirez*, No. CV 07-01205-PHX-EHC, 2008 WL 898658, at *5 (D. Ariz. Mar. 28, 2008). The Court therefore finds that Respondent has not shown by clear and convincing evidence, or even by a preponderance of evidence, that a return of N.V. to Italy would present a grave risk of physical or psychological harm.

### C. "Mature Child" or "Wishes of the Child" Exception

Finally, the Convention provides that the Court "may also refuse to order the return of a child if it finds the child objects to being returned and has attained an age and degree of maturity at which it is appropriate to take account of [the child's] views." Convention, Art. 13. The Court's authority to apply this exception upon a proper finding is discretionary rather than mandatory. *E.g., Garcia v. Pinelo*, 808 F.3d 1158, 1167-68 (7th Cir. 2015).

At the hearing in this matter, N.V. testified that she wanted "to live with my mom and be here in America because I was living in a really sad, miserable place in Italy with my dad." (Tr. 3/1/18 at 105:25 – 106:2.) N.V. gave as reasons for her desire to live in the United States with her mother the following: that she was lonely and had only one good friend in Italy at her school; that her father's home was isolated and there were no children her age nearby; that she was bullied at school because her mother was not present; that she was not learning proper English at the Italian school; and that her father drank and smoked "weed and hash." N.V. was adamant about her desire to remain with Respondent in Arizona.

The Court finds that N.V. objects to being returned to Italy, the first element required for the "wishes of the child" exception to the Convention to apply. It also finds that, at 15, N.V. has attained an age and enough of a degree of maturity that a Court could appropriately take her views into account. But the Court will exercise its discretion not to apply the exception in this matter for two distinct reasons.

First, the Court is persuaded that "in making its determination [whether to apply the wishes of the child exception], a court should also consider whether a child's desire to remain or return to a place is 'the product of undue influence,' in which case the child's wishes should not be considered." *Tsai-Yi v. Fu-Chiang Tsui*, 499 F.3d 259, 279 (3rd Cir. 2007)(internal citations omitted). With all respect to the parties, both of whom, it is clear, care deeply for N.V., the Court concludes that N.V's testimony contains many of the hallmarks of coached or prepared testimony, and thus to an imprecisely known but significant degree is the product of Respondent's influence on her. Much of N.V.'s testimony consisted of answers that she began to provide before Respondent had even completed her questions, and Respondent also led N.V. in her questioning, a habit the Court observed multiple times and to which it sustained Petitioner's objection on the single occasion Petitioner did object. The Court concludes, based on the fact that N.V. has been exclusively with Respondent for the past nine months and the manner in which N.V. testified as to her desire to stay in the United States and her reasons therefor, that N.V.'s stated wishes are likely the product of Respondent's undue influence during those nine months.

Even absent a finding of undue influence, the Court concludes this is an inappropriate matter in which to apply the wishes of the child exception and refuse to order N.V.'s return to Italy for an independent reason. "District courts may decline to apply a defense where doing so would reward a parent for wrongfully [] retaining the child[] in violation of a Contracting State's custody orders." *Custodio v. Samillan*, 842 F.3d 1084, 1092 (8th Cir. 2016). The Court finds this to be just such a case. Petitioner produced a lawful order of the Florence Court, unchallenged by Respondent, awarding exclusive custody to Petitioner as of December 2016. When Respondent retained N.V. beyond the agreed upon date of August 16, 2017, she violated the Contracting State's custody order. To except application of the Convention on the basis of N.V.'s wishes, which are in whole or in part the product of feelings she has developed during these last seven months while she was unlawfully retained in Arizona by Respondent, "would

allow [Respondent] to benefit from her own violations of the Convention." *Garcia*, 808 F.3d at 1168. The Court will not do so.

**IV.   Conclusion**

The Court finds that Petitioner has made the required showing under the Convention for a return of N.V. to Italy. Respondent wrongfully retained N.V. from her last settled habitual residence, in Italy, thereby breaching Petitioner's rights of custody under Italian law. N.V.'s habitual residence remains in Italy. The Court also finds that Respondent has not established an applicable exception to the Convention's return mandate.

This Court's ruling is narrow; it does not decide who should have custody of N.V, which location is in N.V.'s best interest, or who is the better parent. It is limited only to deciding that N.V. will be returned to Italy and Italian courts are the appropriate forum under the Convention to resolve any present or future custody issues.

IT IS ORDERED granting the Verified Petition for Return of Child Under the Hague Convention on the Civil Aspects of International Child Abduction and the International Child Abduction Remedies Act (22 U.S.C. § 9003(b)) on February 16, 2018 (Doc. 1).

IT IS FURTHER ORDERED that N.V. shall be returned to Italy, which this Court finds is the appropriate jurisdiction under the Convention and ICARA to make custody decisions involving N.V. in this matter, within twenty (20) days of the date of this Order.

IT IS FURTHER ORDERED that N.V. shall not be removed from the District of Arizona for any reason other than her travel to Italy in satisfaction of this Order.

IT IS FURTHER ORDERED that the Clerk of Court shall release N.V.'s passport to allow her to return to Italy.

IT IS FURTHER ORDERED pursuant to Article 26 of the Convention and 22 U.S.C. §9007 that Petitioner shall submit his request for reasonable attorneys' fees and costs associated with this action no later than March 30, 2018. The Court shall rule on and order any reasonable costs and fees upon full briefing of the issue.

IT IS FURTHER ORDERED directing the Clerk of Court to enter judgment and close this matter.

Dated this 13th day of March, 2018.

_____
Honorable John J. Tuchi
United States District Judge